UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SEAN DEVLIN,

                    Plaintiff,                              Case No. 1:12-cv-749

v.                                                         HON. JANET T. NEFF

WALGREEN INCOME PROTECTION PLAN FOR
STORE MANAGERS,

                    Defendant.

_____/


## AMENDED[1] OPINION

        Plaintiff Sean Devlin filed this benefits case pursuant to the Employment Retirement Income

Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*., challenging the adverse benefits decision

of Defendant Walgreen Income Protection Plan for Store Managers.  Pending before the Court are

the parties' cross-motions for judgment on the administrative record and their respective responses

(Pl. Mot., Dkt 20 & Def. Resp., Dkt 26; Def. Mot., Dkt 21 & Pl. Resp., Dkt 25).  Having carefully

considered the parties' arguments, the Court concludes, for the reasons that follow, that Defendant's

motion should be granted and Plaintiff's motion be denied.

## I.  BACKGROUND

        Plaintiff began working as a store manager for the Walgreen Company on October 16, 2002

(Dkt 11 at 11, Page ID#57).  The Walgreen Company sponsored a self-funded employee welfare

benefit plan for its store managers, the "Walgreen Income Protection Plan for Store Managers" or

_____

        [1]In the Conclusion to the Opinion entered August 12, 2013, Plaintiff's Motion for Judgment
on the Administrative Record was incorrectly associated with Docket No. 23, rather than Docket No.
20.  The Opinion is amended only to correct this error.

"the Plan" (Dkt 11-1 at 22, Page ID#137). Plaintiff participated in the Plan, which made short-term disability benefits available for eligible employees during the first 180 days of a disability (*id.* at 5, Page ID#123).

The Plan grants the Plan Administrator and the Claims Administrator discretionary authority to "construe and interpret the Plan and make benefit determinations, including claims and appeals determinations" (Dkt 11-1 at 19, Page ID#134). Sedgwick Claims Management Services, Inc. ("Sedgwick" or "Sedgwick CMS") is the Claims Administrator. The Plan provides that in no case will short-term disability benefits be payable after the earliest of the date that "you are able to return to work on a regular, full-time basis," that "you are no longer totally or residually disabled as defined by this Plan," or that "you fail to furnish proof of continuing disability when requested by Walgreens or Sedgwick CMS" (*id.* at 9, Page ID#124). Under the Plan, the words "disabled" or "disability" mean that, "due to sickness, pregnancy or accidental injury, you are receiving appropriate care and treatment from a doctor on a continuing basis and you are prevented from performing one or more of the essential duties of your Walgreens occupation" (*id.* at 8, Page ID#123).

In September 2009 and again in May 2010, Plaintiff underwent back surgery (Dkt 11 at 48, Page ID#94). He stopped working on November 24, 2010, claiming disability based on the diagnosis of "post-laminectomy syndrome" (*id.* at 14, Page ID#60). In support of his claim for short-term disability benefits, Plaintiff submitted a November 10, 2010 office visit record from his orthopedic surgeon, John E. Lamacchia, M.D., which indicated the following: Plaintiff, who has been working 4 hours per day, "denies any numbness, tingling" and "is currently undergoing a physical therapy program per his primary care physician for his fibromyalgia. Overall he feels more fatigue rather than pain across his low back which is activity related" (*id.* at 18, Page ID#64). The

note further indicated that Plaintiff's physical exam revealed "slightly depressed affect," straight leg raises were "negative for radicular symptomatology but reproduce low back pain bilaterally," and a focused spine examination found "tenderness in the lumbosacral spine with a well-healed incision" (*id.*). X-rays demonstrated "no change in hardware position from L4-S 1 with excellent cage positioning at the L4-5 level and a fusion mass noted in the posterolateral gutters from L4-S 1 with wide central decompressive laminectomies noted. The spinal cord stimulator is still in place" (*id.*). Dr. Lamacchia recommended continued physical therapy and work on weaning off pain medications (*id.*).

On December 8, 2010, Defendant advised Plaintiff that the November 10, 2010 medical record did not apply to Plaintiff's claim because the record addressed a reduced schedule of four hours per day and preceded the date he stopped working—November 24, 2010 (Dkt 11 at 11, Page ID#57). Defendant informed Plaintiff it needed additional medical information in order to fully evaluate his claim (*id.*).

Plaintiff thereafter submitted a December 9, 2010 note from Dr. Lamacchia (Dkt 11 at 39, Page ID#85). The note, in its totality, indicated the following: "Mr. Devlin informs me that he in fact was unable to be fully disabled from work on the date of his last clinic visit but instead was disabled from 11/24/10 and we will keep him disabled from 11/24/10 and three months henceforth" (*id.* at 40, Page ID#86). In a December 9, 2010 telephone call to Defendant, Plaintiff explained that he continued working beyond his physician's restrictions because he "could not stop work until there was a replacement since he is the store manager" (*id.* at 10, Page ID#56).

On December 15, 2010, Defendant denied Plaintiff's claim for short-term disability benefits. Defendant explained that "[t]he medical documents submitted for review were from November 10, 2010, which is prior to your first date of disability on November 24, 2010. The off-work note dated

December 9, 2010 did not include any clinical findings to support disability" (Dkt 11 at 43, Page ID# 89). The letter provided for a first level of appeal within 180 days, inviting Plaintiff to submit "additional medical or vocational information, and any facts, data, questions or comments you deem appropriate for us to give your appeal proper consideration" (*id.* at 44, Page ID#90).

On December 17, 2010, Plaintiff submitted a timely first level appeal (Dkt 11 at 48, Page ID#94). Defendant acknowledged receipt of the appeal on December 22, 2010 and again reminded Plaintiff to "[p]lease be sure to submit any medical records, chart notes or diagnostic tests relevant to your appeal" (*id.* at 53, Page ID#99). Nonetheless, Plaintiff did not subsequently provide any medical records in support of his first level appeal.

At Defendant's request, Martin G. Mendelssohn, M.D., a board-certified orthopedic surgeon, conducted an independent medical review of Plaintiff's file. On January 18, 2011, Dr. Mendelssohn attempted to reach Dr. Lamacchia for a teleconference but was informed by Dr. Lamacchia's receptionist that he was in surgery all day (Dkt 11 at 60, Page ID#106). Dr. Mendelssohn attempted to reach Dr. Lamacchia again the following day and left a message with Dr. Lamacchia's assistant requesting a return call, indicating that "if a call was not received within 24 hours, the report would be completed with the available medical information;" however, Dr. Lamacchia did not return Dr. Mendelssohn's telephone calls (*id.*). On January 21, 2011, based on the medical documentation available to him, Dr. Mendelssohn ultimately opined that "although the claimant has been diagnosed having a failed back syndrome and had multiple surgical procedures, his clinical examination reveals no significant functional deficits or neurological deficits that would disable the claimant from his regular occupation as a Store Manager from 11/24/10 to return to work" (*id.* at 61, Page ID#107).

On January 31, 2011, Sedgwick's National Appeals Unit advised Plaintiff that his claim for short-term disability benefits "remains denied." The letter from Sedwick provided the following explanation:

> Based on a thorough review of the submitted documentation, you have a history of chronic low back pain, fibromyalgia and postlaminectomy syndrome. These medical conditions are being managed effectively with physical therapy, Norco and use of a pain stimulator. On examination you were noted to have localized tenderness and despite the nominal low back pain bilaterally your straight leg raising was negative. There were no complicating factors or comorbidities noted. There were no supporting diagnostic studies nor was there any evidence of any neurological compromise or functional deficits. There are not any associated office visits notes or objective diagnostic reports substantiating any specific objective impairment.
>
> From an Orthopedic Surgery perspective, there is no clinical evidence of any neurological findings to support your inability to perform your regular unrestricted full time job duties as of November 24, 2010.
>
> It has been determined that you did not meet the Plan's definition of disability. As such, our claim for Short Term Disability benefits remains denied from November 24, 2010 to your return to work date.

(Dkt 11 at 65, Page ID#111). The January 31, 2011 letter, which was sent to Plaintiff via regular and certified mail, further provided that "[i]f you wish to request a second appeal of this determination, you or your authorized representative may do so by submitting a written request for review of your denied claim within 90 days after your receipt of this letter" (*id.*). However, Plaintiff did not thereafter timely request a second level of appeal.

Nearly one year later, on January 6, 2012, newly obtained counsel for Plaintiff submitted a letter and nearly 600 pages of attachments to Sedgwick, inquiring "as to whether or not Sedgwick CMS is interested in discussing reopening the appeal review process as opposed to requiring us to file suit at this time" (Dkt 12-1 at 2, Page ID#143). On January 27, 2012, Sedwick responded to Plaintiff's letter, pointing out that Plaintiff did not timely request a second level of appeal and that

therefore "the appeal decision is final" (Dkt 16-2 at 3, Page ID#724). Sedgwick indicated that if Plaintiff disagreed with this determination, he had the right to file a civil action under ERISA (*id.*).

Plaintiff initiated this case against Defendant in this Court on July 19, 2012, opining that he was "compelled to pursue this action to redress the wrongful decision of Sedgwick CMS" (Dkt 20 at 2). This Court's Case Management Order required that "defendant(s) shall file with this Court the agreed administrative record" (Dkt 10). Defendant timely supplied this Court with the record on which it made its adverse benefits decision (Dkt 11). Plaintiff subsequently filed "Objections to and Supplementation of Administrative Record," seeking to add the January 6, 2012 letter he sent to Sedgwick (with its attachments) and Sedgwick's January 27, 2012 response to the administrative record (Dkts 12-16).

## II.  ANALYSIS

The parties' cross-motions present two issues for this Court's resolution: (1) whether Defendant's adverse benefits decision was arbitrary or capricious, and (2) whether Defendant's January 27, 2012 decision to treat the record as closed was arbitrary or capricious.

### A.  Defendant's Benefits Decision

1.  *Standard of Review*

Where, as here, the insurance plan administrator is vested with discretion to interpret the plan, the court reviews the ERISA administrator's denial of benefits under the arbitrary and capricious standard, *DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 444 (6th Cir. 2009), and the parties have so stipulated (Dkt 17). The arbitrary and capricious standard is "the least demanding form of judicial review of administrative action." *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 342 (6th Cir. 2011) (quoting *Besten v. Delta Am.*

*Reinsurance Co.*, 202 F.3d 267 (table), No. 98–6225, 1999 WL 1336061, at *2 (6th Cir. Dec. 22, 1999)). "The arbitrary and capricious standard requires courts to review the plan provisions and the record evidence and determine if the administrator's decision was 'rational.'" *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010) (quoting *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003)). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.* A decision reviewed according to the arbitrary and capricious standard must be upheld if it results from "a deliberate principled reasoning process" and is supported by "substantial evidence." *Curry v. Eaton Corp.*, 400 F. App'x 51, 57 (6th Cir. 2010) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)); *see also Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (same).

"Though highly deferential, this standard nevertheless requires 'some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" *Curry*, 400 F. App'x at 57 (quoting *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)). "Although the evidence may be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision is neither arbitrary nor capricious." *Schwalm*, 626 F.3d at 308 (citing *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)); *see also Farhner*, 645 F.3d at 342 (same); *Davis v. Kent. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (same).

"A court may consider only that evidence presented to the plan administrator at the time he or she determined the employee's eligibility in accordance with the plan's terms." *Schwalm*, 626 F.3d at 308. "The court's review is thus limited to the administrative record." *Id.* (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998)); *see also Killian v. Healthsource*

*Provident Administrators, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998) ("There can be no dispute that in this circuit, in an ERISA claim contesting a denial of benefits, the district court is strictly limited to a consideration of the information actually considered by the administrator."); *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990) ("Nothing in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators, a role they would inevitably assume if they received and considered evidence not presented to administrators concerning an employee's entitlement to benefits.").

2.    *Discussion*

Identifying select Sixth Circuit Court of Appeals decisions that, according to Plaintiff, "appear to adopt a bright-line rule that a mere records review by a plan's retained physician(s) was necessarily inadequate to support a benefits denial," Plaintiff opines that "ordinarily the opinions of treating physicians who have actually examined [a] plaintiff will outweigh the opinions to the contrary who have merely undertaken a 'cold' review of the medical file" (Dkt 20 at 12-13). Plaintiff, who characterizes the adverse benefits decision in this case as "factually absurd," argues that Dr. Mendelssohn's "truncated one-time opinion based on a very limited records review is far outweighed by Dr. Lamacchia's longstanding opinion to the contrary based on ongoing clinical treatment, testing and diagnosis" (*id.* at 14). Plaintiff asserts "that entire classes of disabilities do not lend themselves to 'objective' verification via medical tests confirming recognized disabilities" (Dkt 25 at 6).

Defendant responds that Dr. Mendelssohn's report, along with the record evidence, constitutes substantial evidence in support of its decision to deny Plaintiff short-term disability benefits (Dkt 22 at 14). Defendant argues that because Plaintiff failed to provide objective medical evidence in support of Dr. Lamacchia's December 9, 2010 off-work note, it was not obligated to

8

accord any special deference to Plaintiff's treating physician's opinion (*id.* at 13-14, citing *Morris v. Am. Elec. Power Long-Term Disability Plan*, 399 F. App'x 978, 986-87 (6th Cir. 2010); and *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 166 (6th Cir. 2007) ("Requiring a claimant to provide objective medical evidence of disability is not irrational or unreasonable.")). Indeed, Defendant contends that Dr. Lamacchia's December 9, 2010 statement contradicted his own earlier exam notes and was inconsistent with the evidence (*id.* at 14). Defendant argues that it was similarly not obligated to credit Plaintiff's subjective complaints as dispositive absent any corroborating objective medical evidence (*id.,* citing *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381-82 (6th Cir. 1996) ("In the absence of any definite anatomic explanation of plaintiff's symptoms, we cannot find that the administrator's decision to deny benefits was arbitrary and capricious.")).

Plaintiff's argument lacks merit.

As a threshold matter, contrary to Plaintiff's suggestion of any "bright line rule" favoring the opinions of treating physicians, the United States Supreme Court has instead instructed that neither consulting physicians' reports nor treating physicians' reports should be accorded routine deference in ERISA cases. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003) (holding that the Social Security disability program's presumption in favor of treating physicians did not apply to ERISA benefit plans). The Supreme Court reasoned that "if a consultant engaged by a plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'" *Id. See also Kalish v. Liberty Mut./Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 508 (6th Cir. 2005) (following *Nord* to reject a challenge to the adverse benefits decision based on the failure to apply the "treating physician rule"); *Whitaker v.*

*Hartford Life & Acc. Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005) (same); *Hurse v. Hartford Life & Accident Ins. Co.*, 77 F. App'x 310, 315 (6th Cir. 2003) (same).

Moreover, "reliance on a file review does not, standing alone, require the conclusion that [the claims administrator] acted improperly." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005). While a consulting physician's failure to conduct a physical examination may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination, *see Calvert*, 409 F.3d at 295, this is not such a case. This is not a case where both sides presented competing medical evidence on the disability issue such that the absence of an exam may carry weight in an assessment of the competing views. Dr. Lamacchia's December 9, 2010 off-work note was, at best, unsupported by any data in the record, and, at worst, contradicted his earlier notes about Plaintiff's post-surgery progress that Plaintiff's incision was well-healed and that Plaintiff was working four hours per day, denied any numbness or tingling, and felt more fatigue than pain. The record presented to Defendant in this case simply provides no basis from which this Court could agree with Plaintiff's assertion that Dr. Lamacchia's opinion "far outweighed" Dr. Mendelssohn's opinion such that Defendant's adverse benefits decision could be overturned as arbitrary or capricious. *See, e.g., Cook v. Prudential Ins. Co. Of Am.*, 494 F. App'x 599, 605-07 (6th Cir. 2012) (rejecting similar challenges to the validity of the independent reviewers as "no more than cursory statements," "beside the point," and "not alone enough to render Prudential's decision arbitrary or capricious"). Rather, on the record presented to it, Defendant's reliance on Dr. Mendelssohn's file review for its decision was "rational" and does not compel, or even lead to, the conclusion that it acted improperly.

The facts of this case also do not support the conclusion that Defendant's decisional process was anything but deliberate and principled. Defendant advised Plaintiff on four consecutive occasions—December 8, 2010 (Dkt 11 at 11, Page ID#57); December 15, 2010 (*id.* at 43, Page ID#

89); December 22, 2010 (*id.* at 53, Page ID#99); and January 31, 2011 (*id.* at 65, Page ID#111)—that he had not substantiated his claim for short-term disability benefits. Moreover, Defendant sought another medical opinion to supplement the record, and Defendant's consultant, to his credit, sought a teleconference with Plaintiff's treating physician.

In sum, Plaintiff's argument does not demonstrate that Defendant's benefits decision was either arbitrary or capricious. Rather, Defendant's reasoned explanation, based on the evidence in the record presented to it, supports its decision.

### B. Defendant's Decision to Treat the Record as Closed

1. *Standard of Review*

The administrative decision to treat the record as closed is also reviewed under the deferential arbitrary and capricious standard. *See, e.g., Killian*, 152 F.3d at 520.

2. *Discussion*

Plaintiff argues that Defendant erred in failing to consider the medical records he sent with his January 6, 2012 letter (Dkt 20 at 15; Dkt 25 at 5). According to Plaintiff, the "obvious reason" why Defendant emphasizes the "procedural issues of both standard of review and contents of the record is that the Plan knows it is dead on the facts" (Dkt 25 at 6). Plaintiff submits that "the proper administrative record" in this case consists of both the "truncated" record filed by Defendant and the supplements filed by Plaintiff (*id.* at 4).

In response, Defendant references a string of Sixth Circuit decisions holding that when conducting a review of an ERISA benefits denial, a court is required to consider only the facts known to the plan administrator at the time of decision (Dkt 26 at 12). Defendant opines that allowing plaintiffs to pursue the type of endless "submission, review, re-submission, and re-review" that Plaintiff here requests is not only contrary to case law but would also defeat one of ERISA's

11

primary goals, which is the prompt and inexpensive benefit determinations by administrators (*id.* at 14, citing *Perry*, 900 F.2d at 967 ("If district courts heard evidence not presented to plan administrators, employees and their beneficiaries would receive less protection than Congress intended.")).

Plaintiff's argument lacks merit.

In support of his argument, Plaintiff relies on language in the Sixth Circuit's decision in *Killian*, 152 F.3d at 520.[2] However, Plaintiff's reliance is misplaced. *Killian* involved a preauthorization denial for a cancer treatment that the insurance company determined to be experimental. After the first denial of benefits, the insured appealed. While the matter was on appeal, the insured submitted additional clinical data suggesting that the cancer treatment was not experimental. The insurance company refused to consider that evidence. The plan in *Killian* did not address the proper procedure for appealing from a preauthorization denial, and the Sixth Circuit held that it was arbitrary and capricious for the insurer to limit the information that the claimant could offer in favor of his claim, especially where the insurer did not reject other information that weighed against granting the claim. *Id.* at 521.

Here, in contrast, the Plan provided that Defendant's "benefit determinations shall be final and binding on all persons, except to the limited extent to which the Claim Administrator's decisions are subject to further review by the Plan Administrator" (Dkt 11-1 at 19, Page ID#134). In compliance with the language of the Plan, Defendant provided Plaintiff with "a notice of the denial

---

[2]Plaintiff also relies on a Fifth Circuit case, *Vega v. Nat'l Life Ins. Svcs., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999), which is not binding on this Court. Moreover, as Defendant points out, courts in the Fifth and Seventh Circuits consider *Vega* "an outlier whose reasoning does not stand on firm ground." *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 483 (7th Cir. 2009) (citing *Keele v. JP Morgan Chase Long Term Disability Plan*, 221 F. App'x 316, 320 (5th Cir. 2007) (observing that *Vega* is inconsistent with circuit precedent and poses numerous practical problems)).

that explained the Plan's claim review procedures (including relevant time limits)" (*id.*). Defendant did not thereafter refuse to consider any evidence Plaintiff timely submitted; rather, Defendant declined to consider the evidence that Plaintiff supplied nearly a year after its January 31, 2011 decision to deny his first level appeal. This Court cannot conclude that Defendant, in refusing to "re-open" the second level appeal that Plaintiff never pursued, acted either arbitrarily or capriciously. *See, e.g., Nicholas v. Standard Ins. Co.*, 48 F. App'x 557, 565 (6th Cir. 2002) (finding no evidence that information against the claim was favored by the claim procedures where the administrator "sought and received information in both support of and opposition to the claim").

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Administrative Record (Dkt 20) is denied, Defendant's Motion for Judgment on the Administrative Record (Dkt 21) is granted. An Order consistent with this Opinion will issue.

DATED: August 13, 2013          /s/ Janet T. Neff
                                JANET T. NEFF
                                United States District Judge